Maurice Wahl,
Official Referee. The undersigned Referee was appointed as such pursuant to the order of Hon. Edward Thompson", Administrative Judge of the Civil Court of the City of New York, to hear and determine the issue, hereinafter set forth.
The within cause was initiated by the petitioner in this court as a holdover summary proceeding. It was premised on the allegation that the tenant’s term expired on May 31, 1969; and that tenant, without permission held over after said expiration. Issue was joined by tenants’ answer consisting of a general denial. The history of this litigation is long and complex.
The cause was tried before Judge Bell and he rendered judgment of possession in favor of the landlord, by reason of the expiration of the tenant’s term. Said judgment was the subject of an opinion.
Tenant appealed to the Appellate Term, First Department. That court by a divided vote, reversed this court’s judgment and ordered a new trial not inconsistent with its memorandum. (N. Y. L. J., May 25,1970, p. 2, col. 1.)
The landlord’s predecessor had entered into a written lease with the respondent tenant for the rental of a store-front pharmacy, located at 70 Bayard Street, New York, N. Y. The term of the last lease was five years, ending May 31, 1969, and the rental was fixed at $400 per month. Article 38 of the lease provided that the term could be renewed by the tenant for an additional five-year period “at an annual rental rate to be determined by the landlord ’ ’, provided the tenant gave appropriate written notice of an intention to renew. The tenant gave the required notice to renew, and thereafter the landlord determined that the annual rent would be $24,000 per year or $2,000 per month. In response to the landlord’s demand for a rental of $2,000 per month, the tenant tendered $460 per month which was an increase of 15% over the previous rent of $400 per month. The landlord refused to accept the rent tendered by the tenant and served upon the tenant a 30-day notice terminating her tenancy as of May 31,1969, the expiration date of the lease.
*927 On trial, the tenant alleged an equitable defense of mistake of fact in that article 38 of the lease purportedly omitted a provision that the rental for the renewal period would not exceed 15% of the rental provided for the first term. The trial court held that the tenant had failed to sustain her equitable defense of mistake, and, as noted, awarded the landlord possession. The tenant has occupied the premises since 1917.
In a novel approach, the majority at the Appellate Term remanded for a new trial 11 to determine whether or not the rent demanded by landlord was in fact arbitrary or unconscionable.” It also treated the holdover as a nonpayment proceeding. Justice Quinn, in his ‘ ‘ concurring memorandum * * * for the guidance of the court upon the new trial ’ ’, stated that ‘1 the trial court shall fix a rent not unconscionable in the circumstances, upon proof of all prospective relevant economic factors inferentially tvithin the contemplation of the parties at the time the lease was made; such as, hut not necessarily limited to the current rental value of the demised premises at the time of renewal. But in no event shall the rent so fixed he less than what the tenant concedes to have been a contemplated increased rent of fifteen per cent. (Emphasis supplied to indicate suggested clarifying addenda.) ” (The above italics and parentheses are in Justice Quinn’s text.) In short the Appellate Term decreed that, in the interests of justice, a new trial must be had. To prevent the promise from being illusory, the court indicated that in the renewal clause the concept of good faith was important.
Landlord feeling aggrieved by such reversal, prosecuted by leave an appeal to the Appellate Division. That court divided, with both a majority and dissenting opinion, affirmed the Appellate Term (35 A D 2d 380).
The Appellate Division order entered on said appeal, dated February 1, 1971, mandates (1) the determination of the Appellate Term is affirmed; and (2) that the matter is converted into a nonpayment proceeding and is remanded to this court for the sole purpose of determining the appropriate rental for the renewal period in accordance with the criteria laid down by the Appellate Term. The landlord appellant stipulated, as required by law, for judgment absolute.
The Court of Appeals refused to entertain the appeal (29 N Y 2d 747; 29 N Y 2d 868).
Thus with that historical background, the matter at issue now • presented is for this court to fix the fair rental value of the subject premises.
*928 At the hearing held before me both sides stated that they were having great difficulty in obtaining expert witnesses as to the rental value of the pharmacy. Therefore, they agreed to utilize the services of Mr. Irving Baber who is active in the real estate field in the vicinity and it was further agreed by the attorneys that each side would have the right to examine and cross-examine the realty expert upon the matter.
Mr. Baber was examined and cross-examined at length by both sides and evidence was given as to the value of various properties in stores close by to the pharmacy.
Testimony submitted by the expert, I find unsatisfactory. It does not cogently evaluate all the relevant economic factors, e.g., the area, the condition of the current economy, the dollar purchasing value, the real estate taxes and the long tenure of the tenant. With the consent of the parties I visited the premises, albeit I am generally acquainted with rental and area' conditions in New York City. In essence, the parties have vested in me the finality of determining the fair and reasonable rental for the demised premises.
I have carefully analyzed all the pertinent factors and conclude that commencing with June 1, 1969 the fair rental value is $525 per month payable during the extended term ending on May 31, 1974, together with any other charges provided for in the lease agreement.
Perhaps it may not be relevant to this matter, but as a matter of current fact, the small store and small commercial enterprise is facing extinction in New York City. The enormous financial burden cast upon them is an attrition process relentlessly changing the ever changing scene. Numerous articles have been recently published in the newspapers and other media asserting the problem and attesting to my observations as expressed herein. It is a sad commentary that our city and State fathers have not seen it appropriate to enact relevant legislation to remedy this economic and social problem. Certainly, in the light of the Nation’s economic woes, the national administration has invoked by executive order restrictions concerning prices and wages. It must be obvious that uncontrolled commercial or business rents, once governed by New York State control laws, now expired, should once again be considered by our State Legislature, updated, of course to the present economy and within the national price control edict.
Under the decision of Judge Bell, tenant was directed to pay $400 per month for use and occupancy. Such payments plus 15 % thereof have been made during the appeals and pending this determination.
*929 Accordingly, I find and determine that tenant shall pay to the landlord, the sum difference between $460 per month and $525 per month, effective from June 1, 1969 to March 31, 1972, in an aggregate sum within 60 days from date hereof. In addition, commencing with April 1,1972 tenant shall pay for the balance of the extended term, in accordance with the provisions of the lease, the sum of $525 per month. In the event tenant shall default in so liquidating the arrears, landlord shall be entitled, upon five days’ written notice to the tenant, to enter judgment in its favor, with a five-day stay of execution of the warrant.
The foregoing constitutes my decision in the form of this report to hear and determine, in accordance with the reference order of Administrative Judge Thompson.